NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                               :
CYNTHIA J. LIVENGOOD,          :
                               :
          Plaintiff,           :   Civil No. 05-1566 (RBK)
                               :
     v.                        :   OPINION
                               :
COMMISSIONER OF SOCIAL         :
SECURITY,                      :
                               :
          Defendant.           :
_____:
```

**KUGLER**, United States District Judge:

This matter comes before the court upon appeal by Plaintiff Cynthia J. Livengood ("Livengood"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner will be affirmed.

**I.   Background**

Livengood, a forty year old woman with an 11th grade education, alleges that she became disabled on April 14, 2001, due to cervical spine degenerative disc disease, fibromyalgia, and depression. Livengood's past relevant work consists of employment as a deli and retail clerk. She has two adult children and resides in a house with her boyfriend, Robert Mervine, Sr.

**A.     Physical Impairments**

The cause and onset of Livengood's disability are unclear. Although she has been prescribed diazepam since at least February 1993, (Rec. 193), she claims that her disability was triggered by an automobile accident occurring in 2000, (Rec. 248).

The record includes objective evidence of Livengood's degenerative disc disease, including an MRI of the cervical spine, evaluated by Dr. Robert M. White on February 1, 2002, which revealed moderate spinal stenosis at the C5-6 level, mild spinal stenosis at the C4-5 and C6-7 levels, and flattening and deformity of the cervical cord. (Rec. 148.) Another MRI by Dr. James H. Jacoby on or around November 7, 2001, indicated tilting of the lumbar spine to the left, calcific tendinitis of the right shoulder, degenerative disc disease and spondylosis. (Rec. 153-54.)

Livengood also paid numerous visits to rheumatologist Dr. Gerald F. Falasca between April and October 2001 to treat her for a tentative diagnosis of fibromyalgia. As of October 6, 2001, Dr. Falasca's impression of Livengood's condition was objectively documented degenerative disc disease of the cervical spine, possible degenerative disc disease in the lumbar spine, impingement syndrome in the right shoulder, fibromyalgia syndrome, and a significant anxiety component. (Rec. 136.)

However, the documentation is vague as to Livengood's

limitations from these conditions and it is unclear whether she actually has a positive diagnosis of fibromyalgia. In his evaluations, Dr. Falasca noted the presence of non-organic pain behavior, and observed that "[t]he interplay of [the anxiety and non-organic pain] is difficult to unravel based on the encounter today." (Rec. 136.) On October 29, 2001, he declined to certify her disability on the basis that no diagnosis explains her symptoms or their severity, and there is no "objective corroboration of symptoms." (Rec. 133.) He also noted that while she does meet the criteria for fibromyalgia, neither fibromyalgia nor degenerative disease of the spine explain many of her symptoms, and he suggests that her symptoms are more likely attributable to anxiety. (Rec. 133.)

Dr. Falasca repeats the belief that Wright's symptoms may be a product of "underlying anxiety" throughout the record: on May 29, 2001, he noted that "her anxiety . . . is manifesting in these fibromyalgia symptoms," (Rec. 143, 140); on June 22, 2001, he stated, "the root of her symptom . . . are the manifestations of anxiety," (Rec. 138); and on October 23, 2001, his records indicate that he again recommended a psychiatric evaluation and that he believed, "FMS is not the primary problem," (Rec. 134). However, he also emphasized that he is not qualified to certify disability on the basis of anxiety. (Rec. 133.) In May 2001, he "encouraged [Livengood] to seek employment, perhaps in a somewhat

less physically stressful job than previously." (Rec. 140.)

After an orthopedic consultative evaluation on July 29, 2002, Dr. Arthur I. Marks acknowledged that MRI evidence indicated cervical disc disease and moderate spinal stenosis. (Rec. 229.) Dr. Marks also noted that Livengood displayed symptom magnification behavior, and he questioned the possibility of a somatoform disorder. (Rec. 229.) In particular, Dr. Marks stated that Livengood's allegations of pain and limited range of motion were often inconsistent with her behavior during the exam. For example, "[w]hen examined, she limited cervical spinal motions to just a few degrees in any direction. However, at other times during the examination, it was obvious she could extend her neck and flex it to the normal range and rotate beyond 45 degrees bilaterally." (Rec. 228.) Similarly, "[s]he held her muscles in a spastic manner during the examination of the neck, however, when prone, the muscle spasm in the neck disappeared." (Rec. 228.) Dr. Marks concluded that a "diagnosis of fibromyalgia is doubtful." (Rec. 229.)

The record also contains two physical residual functional capacity ("RFC") assessments. An evaluation on February 22, 2002,[1] concludes that Livengood's symptoms "of pain are generally supported by objective findings." (Rec. 209.) The assessment

---

[1] The signature on the form is illegible and the identity of the evaluator is not otherwise indicated in the record.

4

provides that Livengood is limited to lifting or carrying ten pounds occasionally and under ten pounds frequently, due to history of fibromyalgia with tenderness in neck, shoulders, arms and legs and LOM in C spine." (Rec. 205.) The RFC also limits Livengood's pushing and pulling and restricts her to only occasionally balancing, stooping, kneeling, crouching, and crawling. (Rec. 206.) The evaluation also notes manipulative limitations, limited range of motion in both shoulders, and reduced grip strength. (Rec. 207.)

    A second RFC evaluation, completed by New Jersey Division of Disability Determinations Services ("DDS") on September 5, 2002, concludes that Livengood's sole limitations are lifting or carrying twenty pounds occasionally and ten pounds frequently due to cervical disc disease. (Rec. 233.) To so find, the evaluation notes that Livengood's physical exams were inconsistent, for example: "[o]n exam, cervical [range of motion ("ROM")] was limited to just a few degrees in any direction. However, at other times, it was "obvious" by examiner that she would extend her neck or flex it to normal ROM." (Rec. 233-34.) Similarly, she displayed "[l]imited motion of shoulders that was inconsistent from one moment to the next," and she was "noted to exhibit symptom magnification behavior." (Rec. 234.)

    Because of the "[p]aucity of positive physical findings on exam, and several inconsistencies (i.e., only able to move spine

5

a few degrees on exam, yet observed to have full ROM when distracted; markedly lowered lumbar flexion and lateral flexion, yet sitting SLR to 90 degrees and supine SLR to 80 degrees)," the reviewer concluded, "[i]n my judgment, the claimant is capable of performing duty with [lift/carry] limitations as noted." (Rec. 237-38.)

**B.   Mental Impairment**

The record contains two evaluations of Livengood's mental capacity. After examining Livengood on February 11, 2002, Dr. Robert J. Waters, Ph.D., concluded that "her mental status does not contribute to her occupational limitations at this time." (Rec. 203.) In particular, he noted that she "described her mood as 'miserable and sad at times,'" but also "stated 'I'm not really depressed though,'" and "reports no loss of interest." (Rec. 202.) Dr. Waters also noted that Livengood "reports her appetite is 'great,'" but "does report difficulty maintaining sleep." (Rec. 202.) Her "attention was normal," her remote, immediate, and recent "memory was intact," and her "concentration was adequate." (Rec. 203.) Dr. Waters did not reach a diagnosis on either Axis I or Axis II.

A psychiatric review technique form dated February 26, 2002, by Dr. P. Macchia, Ph.D., also concluded that Livengood has no medically determinable impairment and states that "[f]rom psych standpoint, there are no significant functional limitations that

would prevent claimant from performing SGA." (Rec. 212, 224.) He does note that she has a history of anxiety disorder. (Rec. 217.) He concludes that she has mild restriction of activities of daily living and in maintaining social function, but finds that these are caused by physical, not psychiatric symptoms. (Rec. 222.)

**C.   Judge Shoemaker's Opinion**

Livengood filed an application for DIB on May 30, 2001, which was denied both initially and upon reconsideration. A hearing was held on December 23, 2003, before Administrative Law Judge ("ALJ") Daniel W. Shoemaker, which included testimony of Livengood and her cohabitating boyfriend, Robert Mervine, Sr. Judge Shoemaker issued an opinion affirming the denial of benefits on May 25, 2004, concluding that Livengood is not disabled for the purposes of the Social Security Act ("SSA"). The Appeals Council denied her request for review on February 18, 2005, adopting the ALJ's opinion as the Commissioner's final decision.

Judge Shoemaker first determined that Livengood had not engaged in any substantial gainful activity since her alleged onset date of April 14, 2001. He then found that although Livengood alleged fibromyalgia, depression, and cervical spine degenerative disc disease, "there is no evidence . . . that [depression or fibromyalgia] impose any limitations on [her] ability to perform basic work related activities," and only the

7

disc disease was "severe" under the SSA. (Rec. 14.) Despite the severity of Livengood's cervical spine degenerative disc disease, the ALJ found that the condition does not meet a listed impairment. He also noted that Livengood's "allegations regarding her limitations are not totally credible" because her "testimony seemed overly vague, dramatic and exaggerated considering the objective medical findings," and she was "histrionic and dramatic" and inconsistent during physical examinations. (Rec. 18, 17.)

The ALJ determined that Livengood sustained the RFC "to lift and carry up to twenty pounds occasionally and ten pounds frequently; stand, walk or sit for about six hours in an eight hour work day; and engage in unlimited push/pull activity." (Rec. 17.) He determined that this RFC would permit Livengood to resume her past relevant work as a deli and retail clerk, since the Dictionary of Occupational Titles ("DOT") defined the deli clerk position as "unskilled" and the retail clerk position as "semi-skilled" and classified both jobs as "light" in exertional capacity. (Rec. 18.)

**II.   Standard**

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is

"more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 301, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober

9

v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Secretary of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

### III. Analysis

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe,

the Commissioner evaluates whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues on to step four to assess the claimant's RFC and determine whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

Livengood argues that the ALJ erred in failing to perform a function-by-function analysis establishing that her RFC is equivalent to the functional capacity required by her prior employment. In particular, she asserts that the ALJ improperly failed to consider her fibromyalgia and depression in assessing her RFC.[2]

---

[2] Livengood also argues that the ALJ erred in his analysis of the fifth step of the disability inquiry—whether the claimant can perform work available in significant numbers in the national economy. Specifically, Livengood claims that the ALJ neglected to consider necessary testimony from a vocational expert. However, it appears from the opinion that the ALJ never reached the fifth stage of the inquiry, and, in any event, he found Livengood ineligible for benefits at the fourth step of the analysis. His finding that she would be able to resume her past relevant work

### A.     Residual Functional Capacity Assessment

As an initial matter, it is necessary to ascertain whether the ALJ's assessment of Livengood's RFC—finding her capable of lifting up to twenty pounds occasionally, ten pounds frequently, standing, sitting, or walking for six hours in an eight hour workday, and unlimited push/pull activity—was supported by substantial evidence. Livengood asserts, correctly, that "the ALJ must consider the combined effect of multiple impairments, regardless of their severity." Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000); 20 C.F.R. § 404.1523. However, in order for the ALJ to find that the claimant's mental impairment or fibromyalgia impacted her RFC, there must be evidence that these conditions actually imposed some limitation on the claimant. Hartranft, 181 F.3d 359. The burden of providing such evidence rests on the claimant. 20 C.F.R. § 404.1545 (a)(3); Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992) (noting that "the burden is on [claimant] to demonstrate by medical signs or findings that he is unable to work" and "subjective complaints must be substantiated by medical evidence").

Livengood contends that the ALJ failed to consider the effect of her fibromyalgia on her RFC. However, where the

---

obviated the need to conduct any further analysis or address the fifth step of the inquiry.

claimant's doctors are aware of the claimant's alleged condition and the ALJ adopted the conclusions of these doctors, such adoption may constitute "a satisfactory if indirect consideration of that condition." Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005). In such a situation, it is presumed that the condition was taken into account, even if it was not explicitly discussed by the ALJ.

To assess Livengood's physical limitations, Judge Shoemaker relied upon the evaluation by Dr. Marks and Livengood's rheumatologist, Dr. Falasca. (Rec. 17.) Both of these doctors considered Livengood's allegation of fibromyalgia, and both doctors concluded that there was insufficient evidence to establish disability. (Rec. 17.) Both doctors also declined to reach conclusions regarding Livengood's physical limitations because of her "non-organic pain" and "histrionic and dramatic" behavior. (Rec. 17.) Moreover, because the ALJ found that Livengood's testimony lacked credibility, her complaints of subjective symptoms did not suffice to further limit her RFC. Consequently, there is no credible evidence indicating that Livengood's alleged fibromyalgia limits her RFC such that she cannot perform light work.[3]

---

[3] In addressing her fibromyalgia, the ALJ noted:
[A]lthough she was tentatively diagnosed with fibromyalgia, Dr. Falasca felt that this diagnosis did not explain many of her symptoms; and he stated that objective medical findings did not corroborate her

Substantial evidence also supports the conclusion that Livengood's alleged anxiety does not impact her RFC. To rate the degree of functional limitation from a mental impairment, the Commissioner is instructed to examine the extent to which the mental impairment interferes with the "ability to function independently, appropriately, effectively, and on a sustained basis" 20 C.F.R. § 404.1520a(c)(2). More specifically, the Commissioner examines "four broad functional areas . . . Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). Where "substantial evidence exists to support the conclusion that [the claimant] does not in fact suffer from a severe mental impairment," an ALJ is generally entitled to conclude that the claimant's mental condition does not impact her RFC. Cefalu v. Barnhart, 387 F. Supp. 2d 486, 496 (W.D. Pa. 2005).

Here, the sole medical evidence relating to Livengood's mental functioning is that from Dr. Waters' evaluation of February 11, 2002, and Dr. Macchia's psychiatric review dated

---

symptoms and he felt she was not disabled and encouraged her to seek employment. Findings from examination did not reveal any functional limitations, and Dr. Falasca noted she displayed non-organic pain behavior during his examination.
(Rec. 14.)

February 26, 2002.[4] In both instances, the doctors concluded that Livengood did not suffer any functional limitations as a result of her mental condition. (Rec. 203, 222.) During her interview with Dr. Waters, Livengood stated that she is "not really depressed," has not experienced a "loss of interest," and has a "great" appetite. (Rec. 203.) In examining her ability to function, Dr. Waters noted some limitation in her social and test judgment, but found no impairment in her attention, memory, concentration, fund of information, and abstracting ability. (Rec. 203.) He concluded that Livengood's "mental status does not contribute to her occupational limitations." (Rec. 203.) Consequently, there is no medical evidence indicating that Livengood's RFC was limited by any mental impairments.

Accordingly, Judge Shoemaker did not fail to account for Livengood's alleged fibromyalgia and mental impairments when assessing her RFC. No medical evidence suggests these conditions impose any limitations beyond those in the RFC determination. Moreover, Judge Shoemaker's assessment of Livengood's RFC is consistent with that of the RFC evaluation by DDS on September 5, 2002, (Rec. 233), and is not inconsistent with any records of Livengood's treating physicians. Accordingly, the ALJ's RFC

---

[4] Although Dr. Falasca frequently stated that he believed Livengood suffered from issues related to anxiety, he also noted that he was only a rheumatologist and therefore unqualified to assess any anxiety-related disability. (Rec. 133.)

15

determination is supported by substantial evidence.

**B.   Capacity to Resume Past Relevant Work**

Where the Commissioner correctly assesses the claimant's RFC and properly determines that the claimant's RFC would not prevent her from resuming her past relevant work, the claimant is not disabled for the purposes of the SSA. To ascertain whether the claimant is able to perform past relevant work, the Commissioner may employ the DOT definition and any testimony of the job's requirements by claimant. See e.g., Rivera v. Commissioner of Social Sec., 164 Fed. Appx. 260, 264 (3d Cir. 2006) (claimant could perform past relevant work because claimant could perform "light work" consistent with her testimony and DOT description of her past relevant work); Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992) (upholding denial of benefits because ALJ found claimant capable of performing "medium work" and claimant's testimony indicated job responsibilities did not exceed medium work); Hur v. Barnhart, 94 Fed. Appx. 130 (3d Cir. 2004) (holding claimant able to resume past work as a cashier or salesperson, despite doctor's statement of disability, because such work was "light").

After assessing Livengood's RFC, the ALJ found that her testimony and the DOT definitions of her previous work as a deli clerk define the work as "'light' in its exertional capacity and 'unskilled.'" (Rec. 18.) As the ALJ notes, Livengood described

16

the deli clerk position as lifting meat, putting it on a slicer, using a "back and forth" motion to slice the meat and then packing it up, labeling it, and handing it to a customer. (Rec. 254.) She states also that the lifting involved weights "not as heavy as maybe 20 pounds, you know . . . big, giant piece of meat." (Rec. 254.) There is no testimony of Livengood's employment as a retail clerk, but such work is classified as "'light' in its exertional capacity and 'semi-skilled.'" (Rec. 18.)

Because "light" work, as defined by 20 C.F.R. § 404.1567(b), comports with the limitations of Livengood's RFC, and Livengood's testimony and the DOT describe her prior work as light in nature, Livengood is able to resume her work as a deli or retail clerk. Accordingly, Judge Shoemaker's determination that Livengood could resume her past relevant work was supported by substantial evidence and shall be affirmed.

The accompanying Order shall issue today.

Dated: May 30, 2006               S/Robert B. Kugler
                                  ROBERT B. KUGLER
                                  United States District Judge

17